No. 3341.

(Court of Appeal, Parish of Orleans.)

## BUFORD BROTHERS vs. ISAAC SONTHEIMER.

Appeal from Civil District Court, Division "D."

Lyle Saxon, and Saunders and Gurley, for Plaintiff and Appellee.

H. L. Lazarus and Herman Michel, for Defendant and Appellant.

1. A person, though lending money to and in other ways assisting a commercial firm, does not for that reason become a silent partner in the firm and liable for its debts, when proof is made that said person did not share in the profits and participate in the management of the business, nor hold himself out or was held out by others as a partner in the business.

2. When plaintiff resides out of the State a reconventional demand is allowed irrespective of the nature of the demand.

3. A petition is presumed to contain the words of the petitioner since the data upon which it is predicated must come from him, necessarily making him liable for any impertinent or libelous averments therein contained.

4. When the occasion exists and the allegations are pertinent to the issue presented, no libel is charged. But if the occasion does not exist and the allegations constituting the alleged libel are gratuitous defamation of defendant's character, responsibility ensues. Belief from information excuses no one from libel.

5. When it appears that the libel complained of was not committed with evil intent, malice may be inferred from the nature of the charge made

ESTOPINAL, J. Plaintiffs alleging to be creditors of the firm of Talbot & Hilliard, repairers of vehicles, etc., now, and at the time of the institution of this proceeding,

legally adjudged bankrupts, have brought this suit against defendant for Five Hundred and Twenty-seven Dollars and Sixty Cents (527.60), claiming that Sontheimer, the defendant, was a silent partner, and that said partnership resulted:

1st.   By reason of the fact that the defendant made advances of money to the Talbot & Hilliard Carriage Company; participated in the profit and losses of said firm and also in the management thereof.

2nd.   That the defendant on or about the month of August, 1900, entered into an agreement with the said firm to assist them in their business and participate in the profits and losses.

3rd.   That the agreement above mentioned was carried out, defendant making advances and collecting the funds and outstanding accounts and consuming the stock of said firm, applying the same to his own personal use and profit in his business of undertaker, all of which he continued to do up to the time of the failure of the said firm, on December 21st, 1900, and that the amount of assets and outstanding accounts collected and the stock consumed by the said defendant, greatly exceed any and all advances made by defendant, and that by these several acts defendant caused the failure and bankruptcy of said firm, thereby violating the law and depriving the creditors of said firm of their legal and just rights in the premises.

4th.   That the acts of the defendant in collecting and dissipating the firm's funds and consuming the stock of the partnership of Talbot & Hilliard Carriage Company and applying same to his own personal use, has made him liable as a partner of said firm.

Defendant in his answer denies that there was any agreement or intention of partnership between Talbot & Hilliard and himself, or that one was ever carried out by the representations or conduct of the defendant, and that all of the charges of conversion and consumption of the goods of the partnership, and so causing the bankruptcy thereof, were false and untrue.

Defendant then sets up a reconventional demand, charging plaintiffs with libel in having charged him with "consuming the stock of the Talbot & Hilliard Carriage Company, and applying the same to his own personal use and profit and continuing to do so up to the time of the failure of said firm, collecting assets of the firm in excess of all advances made by him to the firm," and other like averments to which we have already referred, all of which has resulted in injuring his good name, his credit, his business standing and reputation, and to humiliate him in the estimation of his business associates, and that he has been damaged in reputation and credit to the amount of Seven Thousand Five Hundred Dollars ($7,500.00).

The lower Court dismissed plaintiff's petition and also defendant's reconventional demand.

A careful review of the voluminous testimony taken in this case satisfies us that there is an absence of proof necessary to connect this defendant in the relation of a partner in the firm of Talbot & Hilliard, but the weight of evidence adduced tends to show that the defendant felt very kindly to Talbot & Hilliard, whose credit was not good, and assisted them very materially by giving them the work of his undertaking establishment and frequently lending them money with which to make purchases of material for himself and others. In the latter event, having no cash to reimburse defendant, the firm would assign him bills due for repairs.

We have searched industriously but vainly for one line of evidence in support of plaintiff's averment anent the agreement of partnership between the defendant and the Talbot & Hilliard Company.

Counsel for plaintiffs in their brief refer us to the testimony of a witness, Driscoll, upon whose evidence great reliance is placed as tending to show the existence of a partnership. This witness admits that he is prejudiced against the defendant, and we think

we discover a labored effort on witnesses part to involve defendant, but on page 56 of the testimony, after relating his very dishonorable active participation in removing and concealing quantities of the stock of goods, not under instructions of Talbot & Hilliard or the defendant, but on his own responsibility and while the property was under seizure, he testifies:

"Q. Well, did he (the defendant), as a matter of fact, ever pay for work done for him by Talbot & Hilliard?

"A. Sometimes he did, and sometimes he would *give them the material* to go on with the work. If they did not have the material, he would advance them the money to buy the material. In a great many cases he did that.

"Q. Is it not a fact that the way the debt was contracted with Schwartz was that Talbot & Hilliard did not have the material to repair Sontheimer's work, or anybody elses work, and Sontheimer bought the material for his own work?

"A. Yes."

At page 63 of Record 1, Driscoll testifies:

"Q. Those rubber tires were shipped with bill of lading attached?

"A. That is correct.

"Q. It was shipped to Talbot, he could not take it out, had to appeal to his friend Sontheimer, and he gave him the money to get the rubber tires out?

"A. Yes, sir, he gave him the money."

The testimony of this witness may be twisted to mean any and everything, but the answers given here seem to be very close to the truth, as we appreciate the evidence.

W. S. Talbot, of the firm of Talbot & Hilliard, testifies categorically that the defendant was only a friend and customer of his, whom he had known for years; that the defendant was not a member of his firm, did not share in any profits of the business, and had no other interest in it than that of a friend, willing and

ready to assist them at various times with loans of money and other favors in business.

J. G. Hilliard, member of the firm of Talbot & Hilliard, whose testimony was, by consent, taken at the Touro Infirmary, where he was a patient, and where he died a few days later, following a surgical operation, the seriousness of which he appeared to fully realize, testified freely and frankly about the affairs of his firm, and as we appreciate the testimony here, his deposition leaves no room for doubt as to Sontheimer's relations with his firm. He was simply a patron of the firm who from the goodness of his heart would not desert them even though he was required at times, by reason of the impecunious position of Talbot & Hilliard, to buy the material or advance money to the firm in order that they might do his work. Both Talbot & Hilliard say positively that they never, at any time and in any manner, held out or represented to any one that Sontheimer was a partner of theirs.

We quite agree with counsel for plaintiff as to the principle that an implied partnership may be created by law as to third persons, but there must be some proof showing the character of the relations born to the firm by the person sought to be made liable as a partner, and upon this proof alone can this relation and liability be determined.

Where, as in the case at bar, it is established that the alleged dormant partner, operating a large livery stable or undertaking establishment, was a patron of a firm engaged in doing repair work to carriages, etc., and that his friendship and good will towards the firm led him to take a live interest in their affairs and well being, going to the end of purchasing material to be used on his own property and lending money to assist the firm in carrying on their business, recouping himself by having work done on his own vehicles, and further, that he was never *held out or represented to any one dealing with the firm* as a partner, but was really himself a creditor, we opine that the proof is insufficient and does not establish partnership relations.

.300

We cannot agree with counsel for plaintiff that "Sontheimer was a secret and dormant partner of the firm of Talbot & Hilliard, in reality and in fact. That Talbot & Hilliard was no more than the shop of Sontheimer, which after events showed conclusively."

The after events to which counsel refers was the release from seizure by Sontheimer of two or three carriages which were in the shop of Talbot & Hilliard at the time and the taking of them to a place adjoining the firm's shop where he, defendant, subsequently had the repairs done by employees of the defunct company who were paid for this work by the defendant himself! Talbot & Hilliard not being at all concerned.

Another transaction which is significant as going to show that the kindly disposition of defendant was not limited or restricted to assisting Talbot & Hilliard, but was bestowed on others as well, was the case of a man named Laughlin, for whom Talbot & Hilliard did some work for which Laughlin was unable to pay, the firm refusing to deliver the work until paid, Sontheimer came forward and paid the bill, greatly assisting Laughlin, and perhaps, indirectly, the firm.—but these facts destroy absolutely, in our opinion, the theory that the defendant was a partner of the firm of Talbot & Hilliard.

Parson, on "Partnership," page 30, says: "A party who participates in the profits of a business, *though he had not consented to be a partner and had not held himself out as a partner,* will be bound to all persons dealing with the concern as a secret or dormant partner."

Participation in the profits is made the essential condition to make a person a dormant partner, and, therefore, liable to third persons. But in the instant case there is no affirmative proof of any participation in the profits by the defendant, but on the contrary, the evidence satisfies us that the defendant did not participate in the profits of the firm of Talbot & Hilliard.

"So a party who has not agreed to be a partner and has no in-

terest in the profits, will yet be held as a partner as to such persons, if he allows his name to be used as a principal in the business." (Parsons on "Partnership," p. 31.)

There is no proof here that the defendant ever at any time held himself out or represented himself to be a partner, nor that he was so held out by the firm of Talbot & Hilliard or any one else.

Where a person furnishes money to conduct a business, nothing being said as to interest or profits and losses, this constitutes a loan and not a partnership.

From all of the evidence in the record worthy of credit, our learned brother of the Lower Court concluded, correctly we believe, that plaintiffs failed to show that the defendant was a partner of the firm of Talbot & Hilliard, dismissing plaintiff's demand, but we are very strongly of the opinion that the Court *a qua* erred in dismissing defendant's reconventional demand as well.

It is clear to us that the averments in plaintiff's petition charging Sontheimer with having consumed the stock of the Talbot & Hilliard Carriage Company, and applying the same to his own personal use and profit and continuing to do so up to the time of the failure of said Talbot & Hilliard Company; that the amount of assets consumed greatly exceed any and all advances made by Sonthemier, and that by collecting the assets and consuming the stock of said Talbot & Hilliard Company, for his own profit and advantage, Sontheimer caused the failure and bankruptcy of said firm, and was a gross and flagrant violation of law and deprived the creditors of said firm of their legal and just rights in the premises, "are averments impertinent to the issue of a partnership sought to be established as against the defendant, and more particularly impertinent to the issue here when it is seen that the proper, legitimate and sufficient averments were made, to-wit: That Sontheimer had entered into an agreement of partnership on or about the month of August, 1900, and that in accordance with said agreement Sontheimer made advances to the said firm

of Talbot & Hilliard, participating in the profits, etc. Had plaintiffs stopped at this point their success or failure would, under any conditions, have depended upon the proof offered in support of these averments, and not upon the averments charging consumption of stock, wrecking and bankrupting of the firm's business. A criminal prosecution of Sontheimer could have resulted, but proof of these acts would certainly not establish the relation of a partner, and these averments are unquestionably impertinent and certainly libelous.

We will agree with counsel for plaintiffs that a mere allegation that a person is a partner is not sufficient, and that it was necessary to set out the facts which went to make him a partner; but when plaintiffs inserted in their petition matter that was impertinent and which was false, defamatory and libelous, proof of which in any case would not establish a partnership, we believe that plaintiffs have over-stepped the bound of legal propriety and must suffer for their indiscretion.

Plaintiffs seek to escape liability for their fault by the statement prepared by their counsel, that they were not familiar with the allegations of the petition which was prepared by one of their counsel, and invoke in support of their position Section 123 of the Revised Statutes, which recites that "No client or person shall be held liable or responsible for any slanderous or libelous words uttered by his attorney at law; but attorneys shall be themselves liable and responsible for any slanderous or libelous words uttered by them."

An examination of the case of Bayle and Pond vs. Fourchey, et al., satisfies us that it is not in point here, the Court saying:

"It is sufficiently proven that the Merchants Insurance Company gave its counsel no instruction whatever as to the kind of defense to be adopted, certainly gave no instruction to charge the plaintiff with false swearing and arson. It is equally certain that no paper or pleading was written or filed in the name of that company making such charges.

"The very worse that can be said, therefore, is that the attorney of the Merchants Insurance Company, *in its interest, maintained in the name* of the London and Lancashire Company, in oral argument, these charges against plaintiffs."

This is not, as we have said, a parallel case, since in that case it is affirmatively shown that the Merchants Insurance Company did not control or employ the attorney of another Company suing for his company in a proceeding in which the Merchants Insurance Company was not a party on the face of the papers.

There is no force in the point raised by plaintiffs, "That there can be no cause of action on damages until the main issue is decided." Plaintiffs are citizens of another State, and defendant, in support of his right to proceed as he has, correctly invokes the provisions of Article 375, C. P.

We are satisfied that the jurisprudence is clear that a client shall be liable for the utterances of his counsel in oral argument or in written brief, but we are firmly fixed in the opinion, that the judicial petition or pleadings in a case are the plaintiff's, and he, and not his counsel, is liable for any improper or libelous averments therein contained.

Plaintiffs do not seem to have exercised even ordinary caution and prudence in securing data for their suit, the record showing that some little investigation in the proper direction before instituting proceedings would have made it plain to them that the charges were without foundation, and in all probability they would not have been made. The unavoidable presumption is that the data upon which the petition was predicated was furnished by the petitioners, they alone being familiar with the *raison d'etre* which gave rise to the suit. This case is not an exception, if there be such, to the usual manner of taking the initial steps in a law suit, and there is nothing in this record showing affirmatively that plaintiffs' counsel, and not plaintiffs themselves, are chargeable with the authorship of the averments in their petition.

Our Supreme Court, in Wimbish vs. Hamilton, 47 Annual, p. 246, a case very much in point with the case at bar, says:

"In reviewing the facts we conclude that neither the occasion existed for the defamation of plaintiff's character, nor was the motive complained of pertinent to the issue. There was then no probable cause existing for the use of the language in the petition of the defendant, Hamilton, as the occasion did not exist, and they were not pertinent to the issue, and the testimony does not show that the plaintiff, as councilman, voted corruptly, as alleged, for the repeal of the ordinance. The defendant urges that he believes that the matters complained of were true. His testimony shows that he had based his conclusions from what he had observed at the meeting at the Council, when the repealing ordinance was passed and what was told to him by others. In the Council meeting, from what is contained in the record, there were no facts which justified him in his assertions against the plaintiff. Acting upon what was told him, he assumes the responsibility of the truth or falsity of the accusations. Belief from information excuses no one for libeling another. The advice of able and distinguished counsel was sought, and this also is urged as a matter of defense. If this could justify false allegations in a petition not pertinent to the issue, and the occasion could be made the means of attacking a party, the reports would be without cases, informing us upon the law in such cases as is before us. In all judicial proceedings the advice and assistance of counsel is had. He prepares the pleadings from the facts gathered from his client, and if these facts are of such a nature as are misleading, the client must bear the responsibility. If they are such as are necessary to allege in the preparation of his suit, and are defamatory, no action would lie for their utterance; but if not necessary, and are gratuitous defamation of character, responsibility ensues. Although the libel complained of does not seem to have been committed with express motive, yet the motive may be inferred from the nature of the charge made."

(Savoie vs. Scanlan, 43 An. 973.)

"Damages are necessarily due for libel and slander. The law presumes damages to follow from the injurious words spoken or uttered against the plaintiff. Weil vs. Israel, 42 An. 962; William vs. McManus, 38 An. 162; Savoie vs. Scanlan, 43 An. 973."

No effort has been made by plaintiffs to atone for or in any way endeavor to right the gravious wrong which the testimony shows was done the defendant, but on the contrary, they have endeavored to prove the truth of the totally impertinent averments of their petition, failing in this, however, as the testimony establishes the absolute good faith of defendant and his entirely honorable deportment in connection with the crippled firm of Talbot & Hilliard.

Reputable citizens have testified to the honesty, integrity and excellent business standing of the defendant in this community, and proof is made, that by reason of this suit and the charges made, his credit and standing was seriously injured and that his health and morale were greatly effected.

There is no fixed rule by which the amount of damages is determined, every case necessarily carrying with it the result which the conditions and facts warrant.

The amount of damages must be based on the expense incurred by the injured party in defending himself, and other elements of damages not to be overlooked, is the humiliation, mental anguish and the injury to business and social reputation to which one may have been subjected in consequence of certain libelous utterances.

Finding, as we do, after a careful examination of the record, that the averments of plaintiff's petition which are made the basis of defendant's reconventional demand are inpertinent, false and libelous, and that defendant, who has borne a good reputation socially and as a business man, has been humiliated and injured in his good reputation, and has been put to the expense of employing counsel to defend this suit, we believe that he should recover of the plaintiffs, Buford Bros., a measure of damages commensurate with the expense, the mental anguish, mortifica-

306

tion and loss to reputation to which their action has subjected him.

In our view of cases of a kindred character decided by our Courts, we find compensation allowed the injured party to have ranged all the way from $450.00 to $1,000.00. The facts here warrant us in indemnifying the defendant, Sontheimer, for the injury sustained to his credit, business reputation and feelings, and the expense of defending these proceedings in the sum of $1,000.00.

It is therefore ordered, adjudged and decreed, that the judgment of the lower Court in so far as it dismisses plaintiff's demand, be affirmed, and that in so far as it dismisses defendant's reconventional demand, it be avoided and reversed, and it is now ordered, adjudged and decreed, that there be judgment in favor of Sontheimer, plaintiff in reconvention, and against Buford Bros., defendants in reconvention, for the sum of $1,000.00, and all costs of these proceedings.

May 1st, 1905.

Rehearing refused.

Writ granted by Supreme Court, June 29, 1905.